McCANDLESS *v.* PRATT, LAND COMMISSIONER OF HAWAII.[1]

ERROR TO THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 109.     Argued November 6, 9, 1908.—Decided December 21, 1908.

The jurisdiction of this court can only be invoked by a party having a personal interest in the litigation. *Smith* v. *Indiana*, 191 U. S. 138.

A writ of error will not lie to review a judgment of the Supreme Court of Hawaii, dismissing the bill in a suit brought by a taxpayer to enjoin the land commissioner from an alleged unauthorized use of public lands where it does not appear that complainant would be personally injured by the threatened use.

---

[1] Original docket title, McCandless *v.* Carter, Governor of Hawaii.

*Quære* and not decided, whether any citizen and taxpayer has a right to maintain a suit in the courts of Hawaii to enjoin the land commissioner from acts involving unauthorized use of public lands, or whether if that right exists a personal loss to complainant must appear.

*Quære* and not decided, whether the land laws of Hawaii are Federal statutes within the meaning, and by virtue of § 83 of the organic act of April 30, 1900, 31 Stat. 141, c. 339, so that their construction. involves a Federal question.

Writ of error to review 18 Hawaii, 221, dismissed.

THE facts are stated in the opinion.

*Mr. Aldis B. Browne,* with whom *Mr. A. G. M. Robertson* and *Mr. Alexander Britton* were on the brief, for plaintiff in error:

Under the practice of this jurisdiction it is not necessary for a complainant who is moving purely in the interests of the public to prevent misfeasance in office, or to protect public property from loss through the mistake, incompetence, or worse, of public officers, to show special injury.

Section 1549, Rev. Laws of Hawaii, requires the Attorney General as part of his duty to appear for and represent the officers of the Government in proceedings in court without charge. It is not the practice to bring cases of this character in the name of the Territory upon the information of an individual *ex relatione. Castle* v. *Kapena,* 5 Hawaii, 27; *Lucas* v. *Amer.-Haw. E. & C. Co.,* 16 Hawaii, 80; *Castle* v. *Atkinson,* 16 Hawaii, 769, and see also *U. P. Railroad Co.* v. *Hall,* 91 U. S. 343; *Crampton* v. *Zabriskie,* 101 U. S. 601.

It should make no difference as to this point that the exchange contemplated by the governor and the Commissioner of Public Lands was to be for lands of equal value. The right of a taxpayer to an injunction to prevent the illegal expenditure of public money is not maintained on the ground that the public was not to receive a *quid pro quo,* but on the lack of legal authority to make it. See *Winn* v. *Shaw,* 87 California, 631; *Nelson* v. *Commissioners,* 6 Colo. App. 279; *Stratford* v. *Greens-*

*boro,* 124 N. C. 127; *Times Pub. Co.* v. *Everett,* 9 Washington, 518; *Stevens* v. *St. Mary's School,* 144 Illinois, 336; *State* v. *Commissioners,* 22 Nevada, 87.

*Mr. Charles R. Hemenway* and *Mr. Henry E. Cooper,* with whom *Mr. William L. Whitney* and *Mr. Charles F. Clemons* were on the brief, for defendants in error:

Plaintiff in error has no standing in court because it appears that he has no interest whatever at stake. A court will only take cognizance of suits at law or proceedings in equity when some injury has been, or appears to have been, done, or is or appears to be threatening the complaining party. The aid of the court will not be extended to one who is suffering no wrong and is not fearing a threatened injury.

While a taxpayer in Hawaii may have his remedy by injunction against official acts which involve the misuse or waste of public funds, the case at bar is not within this rule. *Crampton* v. *Zabriskie,* 101 U. S. 601, 609; *Castle* v. *Kapena,* 5 Hawaii, 27; *Lucas* v. *Amer.-Haw. E. & C. Co.,* 16 Hawaii, 80; *Castle* v. *Atkinson,* 16 Hawaii, 769.

It must appear affirmatively from the pleadings that injury, and substantial injury, will be sustained by plaintiff from the acts complained of, before such acts will be enjoined. *Smith* v. *Indiana,* 191 U. S. 138, 146; *Caffrey* v. *Oklahoma,* 177 U. S. 346, 348; *Clark* v. *Kansas City,* 176 U. S. 114, 118; *Red River Valley Bank* v. *Craig,* 181 U. S. 548, 558; *Supervisors* v. *Stanley,* 105 U. S. 305, 314; *Ludeling* v. *Chaffe,* 143 U. S. 301, 304; *Giles* v. *Little,* 134 U. S. 645, 650; *Ewings* v. *Norwood,* 5 Cranch, 344, 348; *Montgomery* v. *Hernandez,* 12 Wheat. 129, 132; *Henderson* v. *Tennessee,* 10 How. 311, 322; *Hale* v. *Gaines,* 22 How. 144, 160; *Long* v. *Converse,* 91 U. S. 105.

In this case there is no allegation or claim of injury made in the bill upon which the prayer for an injunction is based, and the bill shows that plaintiff, as a taxpayer, will gain rather than lose by the exchange. The facts as they appear from the record are that an exchange of certain public lands was pro-

posed, not only for lands "equal in value" but also "of greater immediate service" to the Territory. As stated in the prevailing opinion below, the bill does not show whether the loss of revenue from rent would be offset by rents from land of equivalent value or by a saving of revenue which otherwise would be used. In the absence of an averment of loss none can be inferred. The taxpayer would gain from the transaction pecuniarily if the Territory should thereby obtain property for such public uses as schoolhouses, for instance, for which otherwise legislative appropriations would be made requiring increased taxation and in such cases the plaintiff's only interest would be his desire that the public land laws be correctly administered.

MR. JUSTICE McKENNA delivered the opinion of the court.

The plaintiff in error, who was plaintiff in the court below, and whom therefore we shall refer to as plaintiff, brought this suit in the Circuit Court of the First Judicial Circuit, Territory of Hawaii, at chambers, to enjoin George R. Carter, Governor of the Territory, and the defendant, Commissioner of Public Lands of the Territory, from exchanging certain lands of the Territory for other lands.

The governor promulgated, on the twenty-ninth of November, 1906, the following order:

"Lanai Lands—Notice is hereby given that having decided an exchange of the public lands of the island of Lanai to be advisable, the commissioner of public lands is prepared to receive offers of other lands that are equal in value to those of Lanai, and of greater immediate service to the Territorial government, from any responsible person, up to and including Saturday, the fifteenth day of December, 1906."

The island of Lanai contains a total area of 86,400 acres, of which the Territory owns 47,679 acres. The lands owned by the Territory are divided into five tracts, and are under lease to one Charles Gay for annual rentals which amount in all to

the sum of $1,600. These facts are alleged in the bill, and that the tracts are of great value—one containing 8,000 acres of land, which is good grazing land, and has three miles of sea frontage, and extends inland six miles, being worth $40,000. Another tract, it is alleged, is of the same kind of land, and has a sea frontage of five and one-half miles and an inland depth of six miles, and is worth $37,000. The other tracts are of the value of $5,000.

It is alleged that Pratt, as commissioner, threatens to and will exchange such lands for other lands if he receives an offer therefor from a responsible person, and that the governor will consent and approve the exchange unless he and Pratt be enjoined. It is further alleged that Pratt has no legal right to make the exchange nor the governor to approve it.

It is further alleged that the intended and proposed exchange of lands "is not proposed by way of compromise or equitable settlement of the rights of any claimants, nor by way of exchange for parcels of lands acquired for any road or roads, nor for a site or sites of a government building or buildings, nor for any other governmental purpose or purposes."

An injunction was prayed against the exchange and against issuing land patents for the lands received in exchange. A temporary injunction was granted, which, upon the motion of the governor, was dissolved, and the bill dismissed as to him. Pratt demurred to the bill and urged as grounds thereof that the bill was insufficient, that it did not appear that he, as commissioner, was doing or about to do any act in violation of law, that plaintiff had no legal capacity to sue, that no injury was threatened or otherwise to plaintiff, that he was not sufficiently interested to be entitled to an injunction or to any relief in a court of equity, that the complaint was not properly verified and that the allegation that the defendant, as commissioner, had no legal authority to exchange public lands, was a conclusion of law.

The demurrer was overruled, the court holding that the plaintiff had the right to bring and maintain the suit, and that

the proposed exchange of lands was "unlawful, illegal and unwarranted." Ten days were given to further plead, and in default of which the injunction was to be made permanent. The decree was reversed by the Supreme Court of the Territory. 18 Hawaii, 221. This writ of error was then sued out and George R. Carter, governor, named therein as a defendant, but the writ was subsequently dismissed, as to him, on motion of his successor, the present governor.

The Supreme Court of Hawaii assumed, without definitely deciding, that the plaintiff had a right to maintain the suit. The question of the validity of the exchange it decided against the contention of the plaintiff, holding that the commissioner had the power to make the exchange. Of the right of plaintiff to sue, the court said that it had been adjudicated in that court that a citizen and taxpayer had a right to obtain an injunction against official acts involving unauthorized use of public funds. To sustain this view the court cited *Castle* v. *Minister of Finance*, 5 Hawaii, 27; *Lucas* v. *Amer.-Haw. E. & C. Co.*, 16 Hawaii, 80; *Castle* v. *Secretary of the Territory*, 16 Hawaii, 769. It is an implication, from the comment of the court, that the ground of those decisions was the pecuniary loss that would come to the taxpayer from the action sought to be restrained. But the court, however, went farther, and said that perhaps the right of the taxpayer to "restrain official acts affecting public property ought not to be based on the pecuniary loss, however trivial or conjectural, but on the broad ground that any citizen may obtain a judicial inquiry into the validity of such acts, and an injunction against them if found to be unauthorized." The court remarked, however, that on account of the view it entertained of the validity of the acts of the officers, it would not decide the question of the right of the plaintiff to sue. On neither question are we called upon to pass, nor are we required to decide whether the land laws of the Territory are Federal statutes by virtue of § 83 of its organic act, which provides that its laws "relating to public lands shall continue in force until Congress shall otherwise

provide," and that therefore a Federal question is involved in the case. We have held that the jurisdiction of this court can only be invoked by a party having a personal interest in the litigation. *Smith* v. *Indiana*, 191 U. S. 138, 148.

The plaintiff has not such an interest. He sues as a property owner and taxpayer, and the relief he asks is an injunction against the Commissioner of Public Lands, to restrain him from exchanging the lands described in the bill for other lands. It is contended that such action is illegal, because that officer has no power to exchange lands under lease, nor has he power to exchange lands except in parcels of not over one thousand acres. The contention is based on the proviso of § 276 of the Revised Laws of Hawaii. We give the section in the margin,[1]

---

[1] SEC. 252. "The commissioner of public lands or superintendent of public works, as the case may be, by and with the authority of the governor, shall have power to lease, sell or otherwise dispose of the public lands, and other property, in such manner as he may deem best for the protection of agriculture, and the general welfare of the Territory, subject, however, to such restrictions as may, from time to time, be expressly provided by law."

SEC. 254. "The provisions of section 253 shall not extend or apply to cases where the government shall by quitclaim, or otherwise, dispose of its rights in any land, by way of compromise or equitable settlements of the rights of claimants, nor to cases of exchange, or sales of government lands in return for parcels of land acquired for roads, sites of government buildings, or other government purposes."

SEC. 276. "The commissioner may with the consent of the governor sell public lands not under lease, in parcels of not over one thousand acres, at public auction for cash. Upon any such sale and the payment of the full consideration therefor, a land patent shall be issued to the purchaser.

"And he may, with such consent, sell public lands not under lease in parcels of not over six hundred acres, at public auction upon part credit and part cash, and deliver possession under an agreement of sale containing conditions of residence on or improvement of the premises sold, or of payment by instalments or otherwise of the purchase price, or all or any of such conditions.

"And in case of default in the performance of such conditions, the commissioner may, with or without legal process and without notice,

and also §§ 252 and 253, which must be considered in connection with it.  The argument to support the contention is that the proviso must be understood in the strict technicality of limiting or qualifying the preceding subject-matter, and to the carving out therefrom some special matter, and, it is insisted, giving the proviso that purpose the specially carved out matter "is the requirement of an auction sale in the case of the exchange of land," leaving as applicable to such exchange all the other limitations.  The Supreme Court of the Territory, as we have seen, decided against the contention.  Let us grant,

---

demand or previous entry, take possession of the premises and thereby determine the estate created by such agreement.  In case of such forfeiture, such land shall be sold at auction, either as a whole or in parcels, for cash. or on terms of time payn.ents in the discretion of the commissioner; and if such sale shall result in an advance on the original price, the original purchaser shall receive therefrom the amounts of his payments to the Government on account of purchase, without the interest, and a *pro rata* share in such advance in proportion to the amounts of his payments.  If such sale shall result, however, in a less price than the original, the amount returnable to him shall be charged with a *pro rata* amount of such decrease proportioned to the amounts of his payments. The treasurer is hereby authorized to pay the amount returnable to the outgoing tenant, upon the requisition of the commissioner, out of any funds available for such purpose.

"Which agreement shall entitle the purchaser to a land patent of the premises upon the due performance of its conditions.

"The commissioner shall have authority to fix any upset price for all such sales for cash or part credit and part cash.

"All such sales shall be held in Honolulu, or in the district where the land to be sold is situated.  Any person designated by the commissioner may act as auctioneer at such sales without taking out an auctioneer's license.

"Provided, however, that land patents may be issued in exchange for deeds of private lands or by way of compromise upon the recommendation of the commissioner and with the approval of the governor without an auction sale, and further provided, that the governor may in his discretion, upon such recommendation and approval, execute quitclaim deeds for perfecting the titles of private lands where such titles are purely equitable or where such lands are suffering under defective titles, or in cases of claims to use of lands upon legal or equitable grounds."

*arguendo*, that the decision may be disputed, what injury has plaintiff shown that he will suffer by the exchange? What injury, indeed, has he shown, either to the Territory or to any taxpayer of the Territory?

The plaintiff alleges that he is a taxpayer, but does not allege anything from which it can be inferred that he will be injured as a taxpayer, subject to a burden as such. It is true it is alleged that the lands which are offered for exchange are under lease for terms varying from twenty-five to thirty-five years, at a rental of sixteen hundred dollars. But it is also alleged that the purpose formed by the governor and commissioner, and the purpose advertised by them, was to get for the lands other lands of equal value and of greater immediate service to the territorial government. The suit was brought to restrain the execution of that purpose. Benefit, therefore, not injury, apparently may result from the exchange, and, so far as we are informed by the record, it may be even a benefit to the policy which plaintiff declares it is the purpose of the land laws of the Territory to promote, and upon which he, in part, bases his interpretation of them, the policy of encouraging "the settlement and homesteading of public lands," and the "parcelling out" of them "in limited areas on favorable terms." The plaintiff takes pains to justify this inference, for he avers that the exchange is not proposed for settlement of rights or claims, nor for the use of roads, nor for the site or sites of the government building or buildings, nor for any other government purpose. Therefore, as plaintiff has no personal interest in the matter in litigation, the writ of error is

*Dismissed.*