HILO MEAT COMPANY, LIMITED, AN HAWAIIAN CORPORATION *v.* AUGUST ANTONE, AND CHARLES R. FORBES, SUPERINTENDENT OF PUBLIC WORKS.

No. 988.

RESERVED QUESTIONS FROM CIRCUIT JUDGE, FOURTH CIRCUIT.

HON. C. K. QUINN, JUDGE.

ARGUED MARCH 6, 1917.  DECIDED MARCH 30, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

STATUTES—*municipal corporations—ordinances.*

The Territory will not be presumed to have waived its right to regulate its own property by ceding to the several counties within the Territory the right generally to pass ordinances of a police nature regulating property within their limits.

OPINION OF THE COURT BY COKE, J.

(Quarles, J., dissenting.)

The plaintiff, the Hilo Meat Company, Limited, a Hawaiian corporation, brought a bill for an injunction against the defendants August Antone and Charles R. Forbes, superintendent of public works of the Territory of Hawaii, to enjoin the defendants from carrying out the terms of a contract between them whereby the said August Antone was to erect for the Territory of Hawaii an addition to the territorial armory building within the city of Hilo, such addition to be a two-story wooden frame extension approximately 60 x 30 feet and to be built adjacent to and at the makai end of the present armory building. A temporary restraining order against the defendants was issued by the court which is still in effect. The defendants filed an answer to the bill of complaint and thereafter plaintiff and defend-

ants entered into and filed an agreed statement of facts. From the records before us it appears that the plaintiff, the Hilo Meat Company, Limited, is a Hawaiian corporation; that the defendant August Antone is a contractor residing at Hilo, County of Hawaii; and the defendant Charles R. Forbes is superintendent of the department of public works for the Territory of Hawaii. The board of supervisors of the County of Hawaii, in pursuance of and within the authority granted by the laws of the Territory of Hawaii, duly enacted and passed certain ordinances, printed copies of which are attached to the agreed statement of facts. These ordinances created certain fire limits or districts within the city of Hilo, and provide "that in district No. 1 the exterior walls of any building erected in the said district shall be either of masonry, corrugated iron, or of noncombustible material." And further provide that "No person or persons or corporation shall erect, repair, change, alter, remove or re-roof any building or structure or excavate any cellar or lot for building purposes within the general fire limits unless he or they shall first obtain a permit for the work from the building inspector of the city of Hilo. And further that "No building shall be erected within the boundaries of district No. 1 of the general fire limits unless said building shall conform in all respects with the requirements of either a first or second class building." The property of the plaintiff and the property of the Territory of Hawaii upon which the defendants were intending to erect the armory addition is located within district No. 1 of the general fire limits of the city of Hilo; that the specifications which are made a part of the contract between defendants provide that "the exterior walls of the additions shall be of single board construction;" that this character of exterior walls of the building is in violation of the terms of the ordinances of the County of Hawaii; that under the authority of the ordinances herein referred to William Vannatta of Hilo, Hawaii, was ap-

pointed building inspector under said ordinances and was and is acting as such building inspector; that the said building inspector was requested by the defendant August Antone to issue a permit for the work to be performed under said building contract made between the defendants, but the said building inspector refused to issue the permit therefor, assigning as reason for such refusal his opinion that the plans and specifications did not comply with the requirements of the ordinances of the board of supervisors herein referred to; that defendant Antone commenced work under his contract and intended to complete said building without a permit therefor from the building inspector, and that no permit has ever been issued by the said building inspector for the work contemplated under said contract; that unless defendants are restrained they will erect said addition without procuring a permit therefor from said building inspector; that the plaintiff is the owner of the land and a one-story frame metal roof building situated thereon and adjacent to the armory premises of the value of $5000, and the plaintiff carries insurance on said building in the sum of $3000; that the present armory building is fifty-three feet distant from the said property of plaintiff; but that if said addition as contemplated is erected the building will then be within twenty-three feet of the property of plaintiff and that the erection of the addition to the armory as provided in the contract between the defendants herein will increase the danger from fire to the property of plaintiff and that it will increase the insurance rate on plaintiff's building to not less than seventy cents per hundred.

The case comes here upon reserved questions of law which present for this court to determine whether the ordinances of the board of supervisors of the County of Hawaii are binding upon the Territory of Hawaii or upon one of the officials of the Territory acting in its behalf in his

official capacity. Section 56 of the Organic Act authorizes the legislature to create counties, town and city municipalities within the Territory and to provide for the government thereof. Under this authority the legislature of the Territory of Hawaii conferred upon the board of supervisors of the several counties of the Territory authority "to regulate by ordinance the limits within which wooden and other inflammable buildings and structures shall not be erected, placed or maintained, which limits, when once established, shall not be changed except by extension; and to regulate also by ordinance, as to location, methods and materials of construction and otherwise, the erection, moving, repairing, placing or maintenance of buildings and other structures within or without such limits, so far as may be necessary or proper for the protection and safeguarding of life, health and property, and to fix penalties for violations of such ordinances." Subsection 6 of section 1554 R. L. "The superintendent of public works shall be, and hereby is, charged with the superintendence and management of the internal improvements of the Territory." Sec. 653 R. L.

It is obvious that the section last quoted delegates to the superintendent of public works authority to act in behalf of the Territory in the class of work provided for in the contract above referred to between the defendants herein.

Counsel for plaintiff urges that the ordinances of the County of Hawaii herein referred to are binding with equal force upon the Territory of Hawaii and its officials in the exercise of their duties as they are upon individuals, and in support of this contention relies largely upon the principles of law contained in the case of *Pasadena School District* v. *City of Pasadena*, 166 Cal. 7, 134 Pac. 985. In that case the Pasadena school district attempted to resist an ordinance of the city requiring that plans and specifications of proposed buildings be submitted to the city building

inspector and his permit for the erection thereof be first obtained and the requisite fee paid.   The court held the city to be a municipal corporation, and the school district to be a quasi municipal corporation, each being a political governmental agency and both distinct corporate entities; that the corporate powers of the school district are the most limited known to the law.   The constitution of the State of California confers upon every city power to make and enforce within its limits all such local police and other regulations as are not in conflict with general laws.   It seems obvious that under this constitutional provision the city of Pasadena would have authority in the absence of any general law on the subject to enforce its ordinance in respect to the construction of school buildings within the city limits, whether constructed by the trustees of the school district or by individuals.   The case before us presents an entirely different situation.   Here a political subdivision of the Territory of Hawaii, to wit, the County of Hawaii, is endeavoring to enforce its ordinances against the very authority giving it life and existence.   The act of the legislature of the Territory of Hawaii conferring authority upon the County of Hawaii to pass ordinances does not expressly or otherwise provide that the parent government, to wit, the Territory of Hawaii, shall be bound thereby.

"It is said that laws are supposed to be made for the subjects or citizens of the State, not for the sovereign power. Hence, if the government is not expressly referred to in a given statute, it is presumed that it was not intended to be affected thereby, and this presumption, in any case where the rights or interests of the State would be involved, can be overcome only by clear and irresistible implications from the statute itself.   Generally speaking, therefore, the State is not bound by the provisions of any statute, however generally it may be expressed, by which its sovereignty would be derogated, or any of its prerogatives, rights, titles or interests would be divested save where the act is specially made to extend to the State, or where the legislative inten-

tion in that regard is too plain to be mistaken." Black on Interpretation of Laws, pp. 94, 95.

In the absence of the ordinances herein referred to the Territory of Hawaii through its superintendent of public works would undoubtedly have the right and power to erect territorial buildings, or additions thereto, throughout the Territory in its own way and without restriction whatsoever on the part of its political subdivisions. It is then clear that the enforcement of the ordinance in the case at bar would in effect restrict the Territory in the exercise of a right or prerogative which it enjoyed prior to the enactment of the ordinances.

"It is a familiar principle that the King is not bound by any Act of Parliament unless he be named therein by special and particular words. The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him in the least, if they may tend to restrain or diminish any of his rights and interests." *The Dollar Savings Bank* v. *United States,* 19 Wall. 227, 239.

There is no sovereignty in this Territory other than that of the national government, but Congress has delegated to certain officials of the Territory certain powers and authority, including, as above noted, authority to the superintendent of public works in the matter of the erection and maintenance of public buildings. See Organic Act, Sec. 75.

The supreme court of Kentucky, in deciding a case in favor of the State, as represented by the Kentucky Institution for Education of Blind, where the specific question was, "Is an ordinance requiring all buildings of a certain class to have fire escapes, applicable to the property of appellant, which is an institution of the State; and if so, is it a valid ordinance," said:

"It is not shown that there is any fund appropriated by the legislature to this institution which might be applied to the purpose of repairing or adding to its buildings. But

beyond that is the larger question, and the one upon which this decision is rested; that is, that the state will not be presumed to have waived its right to regulate its own property, by ceding to the city the right generally to pass ordinances of a police nature regulating property within its bounds." *Kentucky Institution for Education of Blind* v. *City of Louisville,* 8 L. R. A. N. S. 553.

Counsel for plaintiff vigorously contends that the Territory, if it is not bound by the ordinances herein referred to, might, through its officials, erect within the city of Hilo or in the larger and more densely populated city of Honolulu fire traps which would be a menace to the inhabitants and would tend to greatly depreciate the value of surrounding property. To us this seems an idle apprehension. Surely the territorial officials cannot be presumed to be less zealous of the public weal or the safety and protection of the inhabitants of the Territory than are the officials of the several political subdivisions thereof. But be that as it may, we are bound by the fundamental rules of statutory construction, and the law applicable to the question before us, which is that the State will not be presumed to have waived its rights to regulate its own property by ceding to its political subdivisions the right generally to pass ordinances of a police nature regulating property within their limits.

We therefore hold that the ordinances of the County of Hawaii herein referred to do not include and are not binding upon the Territory of Hawaii or its officials properly acting for the Territory, and so holding both subjects contained in the reserved questions of law are disposed of. The reserved questions are answered in the negative.

*Harry Irwin* (*H. L. Ross* with him on the brief) for plaintiff.

*W. H. Heen,* Deputy Attorney General (*I. M. Stainback,* Attorney General, with him on the brief), for defendants.

### DISSENTING OPINION OF QUARLES, J.

I am unable to concur in the opinion of the majority. The quotation from *The Dollar Savings Bank* v. *United States,* 19 Wall. 227, found in the majority opinion, was upon a matter *obiter,* as Mr. Justice Strong who wrote the opinion suggested at page 240. That "the king can do no wrong" is a maxim of the common law based on the idea that all sovereignty vested in the king. That rule cannot obtain in a Territory where the sovereign power is vested in the federal government, and the powers exercised by the territorial government are only delegated powers. The doctrine that the government can do as it pleases, that the king, president or governor and the heads of departments may do as they please, because dealing with property of the government, has not, according to my research, obtained in Hawaii under either the monarchy, the republic or the territorial government. The maxim quoted is at variance with the spirit of our institutions. It is a well settled rule in this jurisdiction that injunction will lie against a public officer, an officer of the government, to prevent an illegal act affecting government property (*Castle* v. *Minister of Finance,* 5 Haw. 27; *Lucas* v. *Amer. Haw. E. & C. Co.,* 16 Haw. 80; *Castle* v. *Secretary of the Territory,* 16 Haw. 769; *McCandless* v. *Carter,* 18 Haw. 221). In the latter case, a suit in equity to obtain an injunction restraining the governor and commissioner of public lands from exchanging certain public lands for other lands, the court at page 224 said: "Perhaps a citizen and taxpayer's right to restrain official acts affecting public property ought not to be based on the pecuniary loss, howsoever trivial or conjectural, but on the broad ground that any citizen may obtain a judicial inquiry into the validity of such acts and an injunction against them if found to be unauthorized." It has been said that this quotation from the case last cited is dictum which was impliedly disapproved by the supreme court of the United States in

*McCandless* v. *Pratt,* 211 U. S. 437, and by this court in *Wilder* v. *Pinkham, ante* p. 571.   These two decisions recognize the rule that a taxpayer, the amount of whose taxes will be increased by a proposed unauthorized act of territorial officers, may maintain a suit for injunction to restrain such act.  In *McCandless* v. *Pratt, supra,* the writ of error was dismissed by the supreme court of the United States because it did not appear that the plaintiff had a personal interest injuriously affected, the proposed exchange appearing to be beneficial rather than injurious.  In *Wilder* v. *Pinkham, supra,* it is said (p. 573): "The theory upon which a suit by a taxpayer to restrain the illegal expenditure of public money may be maintained is that of protection to the property rights of the complainant."   In the case at bar the allegations of plaintiff's bill show that its property rights will be injuriously affected if the proposed building to be erected by the defendant is not restrained, as such building, a wooden structure, twenty-four feet distant from plaintiff's building, will most certainly increase the risk of fire to plaintiff's property and add to the cost of insuring the same.   The citations hereinbefore made of Hawaiian decisions are to show that the rule is established in this jurisdiction that a territorial officer may not do with territorial property as he pleases but must act within the law, and this principle is recognized in *McCandless* v. *Pratt, supra,* and in *Wilder* v. *Pinkham, supra.*

In my opinion the statutory provisions cited in *Kentucky Institution for Education of Blind* v. *Louisville,* 97 S. W. (Ky.) 402, 8 L. R. A. N. S. 553, distinguish that case from the case at bar.  I think the principle upon which the decision in *Pasadena School District* v. *City of Pasadena,* 166 Cal. 7, is based, correct and applicable to the case at bar.

It appears to be conceded by the majority that the legislature of the Territory has the power to authorize munici-

palities to make building regulations and establish fire
districts for that purpose. In my opinion the legislature in
sub-section 6 of section 1554 R. L., in granting to munici-
palities the power to make fire regulations, intended that
those regulations, when made, should be binding upon all
persons whether they happen to hold a territorial office or
not. I do not believe that the legislature in enacting the
statute intended that a fire regulation, made for the pur-
pose of preserving the property and lives of citizens, should
be violated by the superintendent of public works or any
other public officer. To permit public officers to violate the
ordinance, would, to some extent, defeat the object and
purpose of such fire regulations. The statute provides that
when a fire district is established its limits shall not be
changed except by extension. This provision, as I read it,
prohibits decreasing the area of the fire district after it
has been established, and I think the legislature so in-
tended. If certain property in it is eliminated because it
happens to pass to the ownership of the government large
portions of the area might so pass, thereby decreasing the
area of the district and changing its limits without extend-
ing them. I do not understand that the legislature meant
by the word "limits" the mere exterior boundaries of the
fire district. If so, the municipality may create a fire dis-
trict covering the business center where the risk to person
and property from fires is great, and without changing the
exterior boundaries cut out block after block until very
little, except a small space just inside the exterior bound-
aries, would be left. To my mind that would violate the
spirit of the statute. Under conditions and circumstances
easily foreseen the rule announced in the majority opinion
might lead to such result. This suggests to my mind the
danger of assuming that the legislature did not intend the
fire regulations, when made, should be binding upon the
Territory. If the Territory may erect a wooden building

within the fire limits of a municipality in violation of the law which binds everybody else, because it is exercising control of its own property, then it may store explosives and inflammable matter in and upon such property, thereby greatly increasing the danger to life, limb and property of the citizen.

Holding the fire regulations in question to be applicable to the property of the Territory and to the defendants does not prevent the use of its property by the Territory and does not prevent the erection of an armory according to plans and specifications regulated by the ordinances of the city of Hilo, which ordinances have been expressly authorized by the legislature.

In my opinion the reserved questions should be answered in the affirmative.