BRIAN J. KELLY et al., Respondents, *v.* C. LESTER MERRY et al., as Trustees of the Village of Frankfort, et al., Respondents, and MCINTOSH & SEYMOUR CORPORATION, Appellant

(Argued May 25, 1933; decided June 6, 1933.)

*Charles Dickerman Williams* and *Sidney J. Kaplan* for appellant.

*Thomas Shannon* for Village of Bath, *amicus curiæ.*

*Francis G. Hooley* for Village of Rockville Centre, *amicus curiæ.*

*Herbert Johnson* for Village of Freeport, *amicus curiæ.*

*Edward H. O'Connor* for Village of Sherburne, *amicus curiæ.*

154

*S. W. Brennan* for plaintiffs-respondents.

*James W. Bennison* for defendants-respondents.

*Bernon K. Tourtelot* and *J. Theodore Cross* for Utica Gas and Electric Company, *amicus curiæ.*

POUND, Ch. J. This is a taxpayers' action brought under section 51 of the General Municipal Law (Cons. Laws, ch. 24) to prevent an alleged illegal official act on the part of the village of Frankfort, N. Y., in carrying out the terms of a contract between the defendant McIntosh & Seymour Corporation and the village of Frankfort for the purchase and sale of three Diesel engines and other equipment for the purpose of manufacturing electric current for the electric lighting plant of the village. The contract is a conditional sales contract. It provided for the payment of the contract price of $63,000 from the revenues of the lighting system in sixty monthly installments of $1,050 each, evidenced by "pledge orders" given to the contractor, which provide that they are not general obligations of the village but are payable only from such revenues. The village agrees to maintain and collect rates for such service. In case of default debtor may operate the plant as agent for the village and collect the revenues therefrom. Property remains in the seller until the purchase price is paid.

The Appellate Division has certified the following question to this court under the Civil Practice Act, section 588, subdivision 5: " Had the board of trustees of the village of Frankfort power to enter into the contract with the McIntosh & Seymour Corporation, of the 4th day of October, 1932, for the purchase of Diesel engines and apparatus? "

The litigation involves a controversy between the Utica Gas and Electric Company and the defendant McIntosh

& Seymour Corporation. Although the village has had, since 1901, its own electric light and power system, the gas company has since 1907 furnished the current. The gas company claims to have a valid renewal contract with the village to furnish electric current. The village purposed to develop and distribute its own current.

Under section 89 of the Village Law (Cons. Laws, ch. 64):

" The board of trustees of a village

" (Subd. 1) Has the management and control of the finances and property of the village  *  *  *.

" (Subd. 37)  *  *  *  May pledge the faith and credit of the village for the payment of principal and interest thereof [village obligations] or may make the same payable out of or a charge or lien upon specific property or revenues.  *  *  *

" (Subd. 59) May take all measures, do all acts and enact any ordinances, not inconsistent with existing law which shall be deemed expedient or desirable for the good government of the village, its management and business  *  *  *  and may generally exercise all the powers granted to the village."

" § 128-a. Contracts involving an expenditure. No contract shall be made involving an expenditure by the village unless the money therefor has previously been estimated by the board of trustees as necessary to be raised during the then fiscal year, or unless a resolution to borrow money on bonds or other obligations of the village has been adopted by the board of trustees as provided in this chapter or if required by this chapter that the action or resolution of the board of trustees be approved by the electors, then by such approval or if such action or resolution is subject to a permissive referendum as provided for in this chapter then not until thirty days after its adoption nor until approved by the affirmative vote of a majority of the qualified electors of such village voting on a proposition for its approval if within

thirty days after its adoption there be filed with the village clerk a petition as provided for in article five-a of this chapter, or if authorized by an affirmative vote of the electors of said village in accordance with the provisions of this chapter, or unless otherwise available or specifically provided for by this chapter."

The contract in question is a standard form used by the Diesel engine manufacturers, known as the " net revenue " form. The courts of several States have had it under consideration. While it, or similar forms of contract, has been upheld in several States (*Lang* v. *City of Cavalier*, 59 N. D. 75; *Mississippi Valley Power Co.* v. *Board of Improvement of Waterworks Dist. No. 1 of Van Buren*, 185 Ark. 76; *Barnes* v. *Lehi City*, 74 Utah, 321), it has been condemned in *Indiana Service Corp.* v. *Town of Warren* ([Ind.] 180 N. E. Rep. 14); *Van Eaton* v. *Town of Sidney* (211 Iowa, 986); *Hesse* v. *City of Watertown* (57 S. D. 325) and elsewhere on the ground that it goes beyond the scope of the powers granted to villages by the laws of those States. Local statutes vary as well as the grounds for judicial decision.

Beginning with the rule that the municipality can do no act, make no contract and incur no liability not permitted by legislative act, either specifically or by fair and reasonable implication, to accomplish the purposes of the corporation, we turn to the contract in suit in order to test it by this rule. The primary objection made to it and upheld below is that it provides that the purchase price of $63,000 shall be paid out of the net earnings of the plant only, after the payment of all operating expenses, and not from taxes or money raised by taxation. It has been held that this is a contract involving an expenditure of money by the village and, therefore, it is an illegal expenditure because (a) the money has not been previously estimated by the board of trustees as necessary to be raised during the then fiscal year; (b) no resolution to borrow money on bonds or other obligations of the

village has been adopted by the board of trustees, and (c) the money is not otherwise available or specially provided for in the Village Law. (Village Law, § 128-a.) These are the only limitations on the powers of villages to make contracts for the expenditure of moneys for village purposes. (N. Y. Const. art. VIII, § 10.) The establishment and maintenance of a village lighting system is unquestionably a village purpose and the power to make contracts for the purchase of such equipment on credit necessarily follows, in the absence of a prohibition. (*Ketchum* v. *City of Buffalo*, 14 N. Y. 356.) The board of trustees may do all acts expedient or desirable for the management of the business of the village, including the payment of money out of specific property or revenues (Village Law, § 89, subds. 37, 59, *supra*), so long as they are not inconsistent with law. Section 128-a (*supra*) contains nothing inconsistent with the purchase of equipment for a lighting system on credit without recourse to taxation or borrowing if the money is " otherwise available," and it is otherwise available if it is payable out of specific revenues.

The policy of the law is said to be that village charges shall be met by annual recurring taxation and not by the creation of a debt (*Wells* v. *Town of Salina*, 119 N. Y. 280, 290), and that the contract in question creates a debt of the village. (*Newell* v. *People*, 7 N. Y. 9.)

The policy of the law is to be found in the law itself. A policy of home rule for cities has been engrafted onto the Constitution itself. Precepts of cautious administration and municipal economy which should influence village officers are of slight legal consequence when contrasted with the powers granted to them by the Legislature. The question is whether the contract involves an expenditure of village moneys available without taxation or borrowing. Obviously it does so provide by providing for payment from the net earnings of the lighting plant only. This is not a debt of the village in the

ordinary sense. Although an obligation is created on
the part of the village to collect the light rents and apply
them to the payments due on the contract, the moneys
thus raised are not a part of the general income of the
village for they are pledged to the payment of the special
contract indebtedness. The debt was not a general
indebtedness of the village. No action is maintainable
against the village thereon except for breach of contract
on its part. The village does not obligate itself to pay
the contract price. Where a way of payment is pre-
scribed by statute or by contract that is the way which
must be strictly pursued. Contracts for local improve-
ments, payable from special assessments, have been
generally held to create no indebtedness against the
municipality unless its credit is primarily pledged. If
a conditional sales contract creates no indebtedness
against the municipality the same principle may apply
to such contracts. (*Ketchum* v. *City of Buffalo, supra;
Baldwin* v. *City of Oswego,* 1 Abb. Dec. 62; *Hunt* v. *City
of Utica,* 18 N. Y. 442; *Weston* v. *City of Syracuse,* .158
N. Y. 274, 283; *Kronsbein* v. *City of Rochester,* 76 App.
Div. 494.)

The case of *Newell* v. *People* (7 N. Y. 9), relied on
below, dealt with the constitutionality of an act providing
for the application of the revenues of the Erie canal and
does not turn on the definition of debt except as a moral
obligation may be regarded as a debt which the State
must feel bound to recognize; while here the question is
one of municipal power which the Legislature may grant
or withhold as it sees fit.

The " operation on default " clause in the contract
which permits the contractor in case of default in pay-
ment to take over and operate the plant as the agent of
the village would not render the entire contract invalid
even if it were unenforceable. The contract itself pro-
vides that partial invalidity shall not affect the balance
of the contract. If the village is in default in collecting

light rates or refuses to collect and apply the same, the contractor might proceed by mandamus. (*Weston* v. *City of Syracuse, supra.*) This may be the exclusive remedy. Calling the contractor the agent of the village would not make it such agent when it is acting in its own behalf. The contract would not be vitiated if the remedial measure were stricken out. We may well withhold our decision on this point until the question arises.

In brief, it makes no difference what else Village Law, section 128-a (*supra*), prohibits or permits. If it does not prohibit the village from making this contract, it is ineffectual to check the exercise of judgment by the village board in contracting to make expenditures which the section permits. Village authorities are given power to be exercised according to their own ideas of policy. The distinction between moral obligation and legal obligation is clearly drawn. (*Weston* v. *State*, 262 N. Y. 46.). The Village Law gives the widest discretion to the village board to make contracts for the expenditure of money for village purposes so long as it does not add to the burdens of taxation or borrow money on obligations of the village, provided always that money is " otherwise available " to meet the obligations of the village. The board might have done more wisely. We have nothing to say as to that. In fact it seems to have repented by a belated change in the village board. The possible lack of wisdom is not the lack of authority. We cannot run the affairs of the village for it. The village board is responsible to the electors for the exercise of powers granted.

No constitutional limitation applies. The duty imposed by article XII, section 1, to restrict the power of taxation by villages to prevent abuses in contracting debts, is exhortatory and the exhortation has not gone unheeded in the enactment of the Village Law. If an evil exists the remedy is with the Legislature, which may further limit the power of villages to make contracts involving expenditures for village purposes.

Other questions have been raised. We have examined them and find them to require no discussion.

The orders should be reversed, the complaint dismissed, with costs in all courts, and the question certified answered in the affirmative.

CRANE, LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Orders reversed, etc.