J ones, J.
 

 The village of Brewster is a small village embracing between fifteen hundred and two thousand inhabitants. At and prior to the time this contract was entered into with the village, the latter owned a distribution system which furnished current obtained from the Ohio Public Service Company. The village deemed it best to manufacture its own current, and, with that purpose in view, the two ordinances were adopted and negotiations had between the contractor and the village whereby the former proposed to furnish certain generating machinery equipment for the local village plant for the sum of $24,960, payable as follows: $1500 in cash with the order; $3500 upon the arrival at the plant of the principal parts of the equipment, and. the balance to be paid in sixty monthly payments bearing interest at 6%. The contract in controversy was one which the village terms a conditional sale, the title remaining in the seller until paid for in cash or by deferred installments payable out of the
 
 *348
 
 net revenues of the plant; and it was agreed such installments were not in any way to be general obligations of the municipality payable from taxes or out of its general funds. The title, to the machinery was to remain in the contractor until final payment of the purchase price. In support of its claim sustaining the validity of the contract the village contends that it is acting within its proprietary capacity, since it proposed to furnish electric current to its inhabitants; and that in so acting the village occupied a relation similar to that of private companies, and therefore had ample authority to pass the ordinances and make the contract challenged in this suit.
 
 Travelers Ins. Co.
 
 v.
 
 Wadsworth,
 
 109 Ohio St., 440, 142 N. E., 900, 33 A. L. R., 711. The second proposition of the syllabus reads as follows: ‘ ‘ The power to> establish, maintain, and operate a municipal light and power plant, under the Constitution and statutes aforesaid, is a proprietary power, and in the absence of specific prohibition, the city acting in a proprietary, capacity may exercise its powers as would an individual or private corporation.”
 

 Conceding, however, that the village is acting in a proprietary capacity, yet, in the domain of finance, where its debt incurring or taxing power is involved, the constitution and laws of this state have placed municipalities under legislative control. If either the constitution or the state law has prohibited the execution of contracts such as are here involved, or if the law has provided other methods controlling their execution, the law must be followed.
 

 One of the major, important questions in this case is whether the contract negotiated by the village contravenes any of the provisions of the Ohio constitution; if the village is prohibited by the constitution from acting directly it has no power to act indirectly.
 
 Taylor
 
 v.
 
 Commissioners of Ross County,
 
 23 Ohio St., 22. The Court of Appeals in its opinion gave no con
 
 *349
 
 sideration to Article VIII, Section 6 of the Constitution, which reads as follows: “No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation, or association * * *.”
 

 The plan adopted by the village and contractor is generally referred to as the “pledge of receipts plan,” whereby the machinery sold is to be paid entirely from the net revenues of the village plant. Contracts of a similar character have been before the various courts of this country and have given them some tribulation. Among other cases cited by counsel for plaintiffs in error are the following:
 
 Carr
 
 v.
 
 Fenstermacher,
 
 119 Neb., 172, 228 N. W., 114;
 
 Lang
 
 v.
 
 City of Cavalier,
 
 59 N. D., 75, 228 N. W., 819;
 
 Williams
 
 v. Kenyon, 187 Minn., 161, 244 N. W., 558;
 
 Kentucky Utilities Co.
 
 v.
 
 City of Paris,
 
 248 Ky., 252, 58 S. W. (2d), 361;
 
 Kelly
 
 v.
 
 Merry,
 
 262 N. Y., 151, 186 N. E., 425. Counsel for the defendant in error cite among others the following cases:
 
 Bell
 
 v.
 
 City of Fayette,
 
 325 Mo., 75, 28 S. W. (2d), 356;
 
 Schnell
 
 v.
 
 City of Rock Island,
 
 232 Ill., 89, 83 N. E., 462;
 
 Hesse
 
 v.
 
 City of Watertown,
 
 57 S. D., 325, 232 N. W., 53.
 

 While in the main the contracts in some of the cases above mentioned are similar to the one in the case at bar, the divergence of opinion arises because of the construction of constitutional and statutory provisions in the various states where the decisions are made. We have been unable to find any case which bottomed its conclusion upon a constitutional provision such as we have in Article VIII, Section 6 of our Constitution. That section has been construed by this court a number of times, and it has uniformly been held that a financial transaction, entered into by a city, whereby it either directly or indirectly attempts to raise money
 
 *350
 
 for or loan its credit to or in aid of any company, is constitutionally invalid.
 
 Taylor
 
 v.
 
 Commissioners, supra; Alter
 
 v.
 
 City of Cincinnati,
 
 56 Ohio St., 47, 46 N. E., 69, 35 L. R. A., 737;
 
 Markley
 
 v.
 
 Village of Mineral City,
 
 58 Ohio St., 430, 51 N. E., 28, 65 Am. St. Rep., 776;
 
 State, ex rel. Campbell, Pros. Atty.,
 
 v.
 
 Cincinnati St. Ry. Co.,
 
 97 Ohio St., 283, 119 N. E., 735;
 
 City of Cincinnati
 
 v.
 
 Harth,
 
 101 Ohio St., 344, 128 N. E., 263, 13 A. L. R., 308. In the
 
 Alter case, supra,
 
 the first and second propositions of the syllabus read:
 

 “1. Under section six of article eight of the constitution, a city is prohibited from raising money for, or loaning its credit to, or in aid of, any company, corporation, or association; and thereby a city is prohibited from owning part of a property which is owned in part by another, so that the parts owned by both, when taken together, constitute one property.”
 

 “2.
 
 A city must be the sole proprietor of property in which it invests its public funds, and it cannot unite its property with the property of individuals or corporations, so that when united, both together form one property.”
 

 It appears from that case that the city owned its existing water works, and that its enlargements, after construction, were to be owned by the person constructing them. It is thus stated on page 65 of the opinion: “When the enlargements, extensions, improvements and additions shall be thus made, completed and connected with the existing water-works so owned by the city, the enlargements, extensions, improvements and additions, together with the existing works, all taken together, will constitute one complete whole — one water-works system, one water-works— owned in part by the city, and in part by the individual or corporation, and thereby the union of public and private capital and funds in one enterprise will become complete.
 
 * * *
 

 “* * * It is this close connection and depend
 
 *351
 
 ence one upon the other that constitutes both together as a single whole, and makes a union of public and private funds and credit. The existing works are to be connected with the new improvements, and are thereby to lend aid to the person, company or corporation making and owning such new improvements.”
 

 In the
 
 Markley case, supra,
 
 Spear, J., on page 438 of his opinion, stated that the interdict of Section 6, Article VIII of the'Constitution, “applies as well to the case of ah individual, as to the aggregations named, * *. It is intended to prevent the union of public and private capital in any enterprise whatever.”
 

 The constitutional section under consideration provides that no laws shall be passed authorizing any city or town to raise money for or in aid of any company or association; or to loan its credit to or in aid'of any such company. In order to ascertain whether the negotiations culminating in the proposed contract amounted to a union of the village property with that of the contractor, and thus fall within the condemnation of Section 6, Article VIII of the Constitution, it becomes necessary to consider the councilmanic legislation and the contract executed in conformity therewith. As heretofore stated the village was a small one, possessing its own distribution system when these negotiations were had. The record does not disclose how extensive this village system was or what was its probable value. However, it was stated in oral argument that the valuation of this distribution system was in the neighborhood of $60,000. The contractor was to furnish machinery for the generation of electric power for the sum of $24,960; $5000 to be paid in cash by the time of its arrival at the village plant and the balance of the purchase price to be paid in sixty equal consecutive installments, commencing thirty days after the completion of erection. Upon its part the village was to erect the necessary foundations and buildings
 
 *352
 
 for the installation of the machinery. The machinery after its installation was to be joined to the distribution system of the village, and thus form one complete system for the furnishing of electricity to- the village and its inhabitants. While it is true that the net revenues derived from the joinder of the properties were not to be realized from general taxes, but from the income from the plant; it is also true that the village’s distribution system must originally have been raised by taxation. If such be a fact it follows that, by the contribution of the two properties, a part by the village and a part by the contractor, these properties were placed in a common pool from which the net earnings were to be paid to one member of the pool until its purchase price should be paid under the agreement. Let us assume that the village’s distribution system has a value of $60,000, as indicated by counsel. Had the village advanced that amount in cash or credit, from which the net earnings of the joint enterprise would be first paid to the contractor in liquidation of his purchase, as stated by Johnson, J., on page 308 of his opinion in
 
 State, ex rel.,
 
 v.
 
 Cincinnati, supra,
 
 it would be “in effect a lending of the city’s [village] credit in aid of the company” [contractor]. To the extent that the village devoted the whole of its own property to secure the contractor, to that extent did it loan its financial credit to and in aid of the contractor.
 

 In support of their contention counsel for the village cite the case of
 
 Nichol
 
 v.
 
 Tolhurst, Village of Amherst,
 
 decided by the Court of Appeals of Lorain county
 
 m a pro forma
 
 opinion, on October 6, 1933, where the appellate- court sustained a contract for the purchase of machinery under village legislation very similar to the case at bar; and since we overruled a motion to certify in the Lorain county case, counsel argue that to secure uniformity of judicial decision we should overrule the Court of Appeals in the instant case.
 

 We have heretofore announced that, in cases knock
 
 *353
 
 ing at our door for certification, the refusal of a motion to certify, even if the same legal question is decisively involved, does not furnish an adjudication of the question by this court as an established precedent for future cases. Upon a full consideration of the case on its merits we are of the opinion that a contract of this character made by a municipality contravenes the spirit, if not the letter, of our constitution as outlined in the former decisions of this court when construing the constitutional section above named.
 

 A large portion of the briefs of counsel has been devoted to the question whether or not the second ordinance adopted by the village council was subject to a referendum. The conclusion that we have reached as to the invalidity of this contract makes it unnecessary to decide that question; nor, for the same reason, is it necessary to decide whether, under the Ohio law, proposals for bids require payment to be made in “cash” or whether they may be paid out of the net receipts derived from the operation of the utility.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Wevgandt, C. J., Stephenson, Matthias and Bevis, JJ., concur.
 

 Allen and Zimmerman, JJ., not participating.