Zimmerman, J.
 

 A majority of the court entertains the view that where the solicitor of a municipality has
 
 *601
 
 instituted a suit for injunction under Section 4311, General Code, at the request of a taxpayer, and the court becomes satisfied that such solicitor is not proceeding in good faith or with due diligence, the court has the inherent power to allow interested taxpayers to become intervening parties to the action, who thereupon have the same rights to plead, participate in the proceedings and appeal as if they had been original parties.
 

 A majority of the court is also of the opinion that the trial court in the present cause rightly permitted Horace O. Miller and The Cincinnati Gas & Electric Company to become parties to the action.
 

 The writer and Chief Justice Weygandt find themselves in disagreement with the majority of their associates on the above procedural question. It is their conviction that where, at the request of a taxpayer, the solicitor of a municipal corporation makes application to the proper court for an order of injunction under Section 4311, General Code, such taxpayer may not thereafter become an intervening party to the litigation with the right to shape the proceedings according to his own notions. Neither has such taxpayer, not a party, the right to appeal from an adverse judgment in the cause.
 

 Sections 4311 and 4314, General Code are controlling. The former reads:
 

 “The solicitor shall apply in the name of the corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the corporation, or the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinance governing it, or which was procured by fraud or corruption.”
 

 The latter states: “In case the solicitor fails upon the written request of any taxpayer of the corporation to make any application provided for in the preceding
 
 *602
 
 three sections, such taxpayer may institute suit in his own name, on behalf of the corporation; and any taxpayer of any municipal corporation in which there is no solicitor may bring such suit on behalf of such corporation. No such suit or proceeding shall be entertained by any court until the taxpayer shall have given security for the costs of the proceeding.”
 

 Prom a perusal of these quoted statutes it will be noted that Section 4311 provides merely that “the solicitor shall apply * * * to a court of competent jurisdiction for an order of injunction.” And, by virtue of Section 4314, any right of the taxpayer to act does not arise until “the solicitor fails * *
 
 *
 
 to make
 
 any
 
 [such] application.”
 

 Here, the solicitor did respond at the instance of the taxpayers by filing an injunction proceeding in a eourt of competent jurisdiction, and to recognize the taxpayers’ contention that they should be permitted to become parties because of the solicitor’s claimed indifference, necessitates adding to the statute considerable language omitted by the General Assembly.
 

 The presumption may ordinarily be indulged that when the solicitor of a municipality undertakes the prosecution of an action under Section 4311, General Code, at the request of a taxpayer, he will pursue the undertaking in good faith and to the best of his ability. If he deems the proposed litigation unjustified and without merit, he may decline to proceed, at which point and only at which point is the taxpayer enabled to bring suit.
 

 In this connection it is important to bear in mind that the purpose of the action is not to protect any interest peculiar to the taxpayer himself but to protect a right belonging to the municipality and its inhabitants generally.
 

 The writer’s position is that the General Assembly having within its prerogatives prescribed a definite and exclusive method of challenging the alleged wrongful
 
 *603
 
 conduct of municipal officers, the judicial branch of the government is not at liberty to substitute a different and conflicting plan. Legislation permitting a taxpayer to become an intervening party when the court believes the solicitor is not acting diligently or in good faith would no doubt be desirable, but the court has no right to supply any such deficiency.
 

 Several of the lower courts of Ohio at various times have been confronted with this same question and have determined that when the solicitor of a municipality brings an action under and in accordance with Section 4311, General Code, a taxpayer may not thereafter become a party by way of intervention.
 

 The conclusion seems inescapable then that, under the facts of this case, Horace O. Miller and The Cincinnati Gas & Electric Company could not rightfully enter the controversy as intervening parties, and that the Court of Common Pleas was in error in permitting them to do so. Compare,
 
 Pierce
 
 v.
 
 Hagans,
 
 79 Ohio St., 9, 86 N. E., 519, 36 L. R. A. (N. S.), 1.
 

 The right of appeal is not an inherent or inalienable right, but must be conferred by authority upon the person who would enjoy it. 2 American Jurisprudence, 847, Section 6. It was unknown to the common law. 4 Corpus Juris Secundum, 81, Section 18. The Constitution of Ohio prescribes the jurisdiction of certain courts, but is silent as to who may prosecute an appeal. It is therefore necessary to turn to the statutory law of the state. Neither Section 4314, General Code, nor the other sections with which it is associated require the solicitor to take an appeal. Nor is the taxpayer accorded that right in the event the solicitor remains immobile.
 

 The other field of appropriate search is the Appellate Procedure Act (Section 12223-1
 
 et seq.,
 
 General Code). There, the word “appellant” and the phrase “party appealing” are frequently used interchangeably, and the apparent legislative intent was to confer
 
 *604
 
 the right of appeal on sneh persons as are parties to an action. The terms “party aggrieved” or “person aggrieved” do not occur. No statutes have come to our attention broad enough in scope to permit an appeal by a taxpayer, on behalf of a municipality or in his own right, under conditions resembling those in the pending cause.
 

 Moreover, this court has remarked under a former statute that the right of appeal is confined to parties to the record. “Third persons are not authorized to act by the law; nor would good policy allow them to interfere and remove causes, by appeal. It is manifest that such a practice could not be tolerated, as it would produce many evils * *''
 
 Reid
 
 v.
 
 Quigley,
 
 16 Ohio, 445, 447. See, also,
 
 Fiedeldey
 
 v.
 
 Diserens,
 
 26 Ohio St., 312, 314.
 

 Turning to other jurisdictions, we find the rule of general acceptance to be that in the absence of an express statute on the subject, one interested in litigation as a member of the public or indirectly as a taxpayer may not prosecute an appeal.
 
 McCandless
 
 v.
 
 Pratt,
 
 211 U. S., 437, 53 L. Ed., 271, 29 S. Ct., 144;
 
 Clark, State Highway Commr.,
 
 v.
 
 Warner, County Clerk,
 
 85 Okla., 153, 204 P., 929;
 
 Nichcolas
 
 v.
 
 Lawrence,
 
 161 Va., 589, 171 S. E., 673.
 

 In
 
 Kentucky-Tennessee Light & Power Co.
 
 v.
 
 City of Paris
 
 (C. C. A. 6), 48 F. (2d), 795 (certiorari denied, 284 U. S., 638, 76 L. Ed., 543, 52 S. Ct., 20), it was decided that where a city had commenced a suit to rescind a contract for the leasing and sale of a public utility made by its governing body, a taxpayer could not intervene and possessed no status which entitled him to appeal.
 

 The case of
 
 In re Cole’s Estate,
 
 102 Wis., 1, 78 N. W., 402, 72 Am. St. Rep., 854, is sometimes cited as announcing a contrary rule. However, the taxpayer there allowed to appeal was properly in court as a party.
 

 As concerns both the first and second propositions
 
 *605
 
 above discussed, the difficulty confronting the taxpayers is the lack of a statute or statutes affording them the privileges for which they are contending.
 

 This brings us, therefore, to a consideration of the substantive questions presented on the appeals.
 

 First: Was Ordinance No. 2237, enacted by the city commission of Middletown, subject to referendum?
 

 Section 5, Article XVIII of the Constitution, provides in substance that no municipal ordinance covering the acquisition, construction, etc., of a public utility shall become effective until thirty days after its passage, and during such time shall be open to a referendum petition.
 

 It was held in
 
 State, ex rel. Didelius, City Solicitor,
 
 v.
 
 City Commission of Sandusky,
 
 131 Ohio St., 356, 2 N. E. (2d), 862, that the referendum provisions of Section 5, Article XVIII of the Constitution, relate only to the initial ordinance.
 

 However, such case undoubtedly contemplates as an initial ordinance one “providing for the acquirement or construction of a public utility and the method of payment therefor.”
 

 In the pending case, Ordinance No. 2226, first passed, merely declared the necessity for the construction or purchase of a municipal electric light and power plant with the requisite equipment, etc., therefor, and nothing more. This was not a complete initial ordinance within the holding of the
 
 Sandusky case,
 
 referred to just above, requiring some definite accompanying statement of the plan of financing to make it so.
 

 It is our opinion, therefore, that Ordinance No. 2237 is of the character comprehended by the terms of Section 5, Article XVIII of the Constitution, and amenable to referendum in accordance with that section.
 

 The next question is: Did the Court of Appeals possess the power to pass on the constitutionality of Ordinance No. 2237, upon a finding that it should not
 
 *606
 
 go into effect until after a favorable referendum vote?
 

 While it may not have been necessary for the Court of Appeals to pass on the constitutionality of Ordinance No. 2237, by reason of the position taken in relation to its subjectivity to referendum, such action was appropriate.
 

 The question was squarely raised by the pleadings, is discernible in the bill of exceptions, was considered and decided by the trial court and has been vigorously argued by counsel in every court where the cause has been presented.
 

 The third question is: May a municipality in issuing mortgage utility bonds under Section 12, Article XVIII of the Constitution, secure such bonds not only by the property acquired or constructed with the proceeds from the sale of such bonds, but also by other property composing a part of the utility?
 

 Section 4, Article XVIII of the Constitution, reads in part: “Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility * *
 

 Section 5, Article XVIII, requires that such project shall be accomplished by ordinance not effective until thirty days after its passage, and subject to referendum.
 

 Section 12, Article XVIII, which is the important one in this case, provides: “Any municipality which acquires, constructs or extends any public utility and desires to raise money for such purposes may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law; provided that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such municipality but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise in no case shall ex
 
 *607
 
 tend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure.”
 

 It has been declared that Section 12 is self-executing. (28 Ohio Jurisprudence [Supplement], Section 106, note.) Obviously it was adopted to enable a municipality to acquire, construct or extend a public utility without imposing a liability on property other than that of the utility itself. Taking the words used in their ordinary sense, they convey the meaning that all property directly connected with the operation of the utility, plus its revenues and franchise,-may be pledged for the payment of the mortgage bonds.
 

 If the contention were to be accepted that such mortgage bonds may cover only that part of a utility actually financed therewith, a situation would arise impairing the value of the constitutional provision, vitiating its purpose and making it difficult if not impossible to find a market for the bonds.
 

 Section 12 speaks for itself. It is not ambiguous, is self-sufficient and self-contained, and an impartial reading of it leads to the conclusion that it authorizes a municipality to secure the mortgage bonds described by the inclusion of all the property and revenues of the utility, present and future.
 

 The last question is: Do Section 13, Article XVIII of the Constitution, and the Uniform Bond Act govern the issuance of utility mortgage bonds projected solely under Section 12, Article XVIII of the Constitution?
 

 It is insisted that Section 12 is to be read in connection with Section 13, Article XVIII of the Constitution, and when this is done it becomes plain that utility mortgage bonds can be issued and sold only in conformity with the Uniform Bond Act.
 

 We do not so regard the matter, and are in accord with the analysis made in the brief filed on behalf of the city of Cincinnati, as
 
 amicus curiae,
 
 wherein it is said:
 

 
 *608
 
 “We submit that tbe following is a fair statement of the effect of the two sections consonant both with their language and with their obvious intent.
 

 “(a) Municipalities may issue general obligation bonds for utility purposes, so long as such bonds are within ‘the general limit of bonded indebtedness prescribed by law.’
 
 (State, ex rel.,
 
 v.
 
 Weiler,
 
 101 Ohio St., 123 [128 N. E., 88].)
 

 “(b) Municipalities may issue mortgage bonds for utility purposes ‘beyond the general limit of bonded indebtedness prescribed by law’ and may secure them by a pledge of the property and revenues of he utility, such mortgage bonds shall not constitute a debt charge against the general credit of the city.
 

 “(c) The General Assembly may enact laws prescribing a ‘general limit of bonded indebtedness’ within which a municipality may pledge its full faith and credit.
 

 “(d) The General Assembly may impose other restrictions on the power of a municipality to incur debts which shall be a general charge against the municipality.
 

 “(e) The General Assembly may limit the power of municipalities to raise revenues by taxation.”
 

 It follows that while the Uniform Bond Act undoubtedly applies to general obligation bonds for which a tax must be levied, it does not apply to utility mortgage bonds created and issued exclusively under Section 12, Article XVIII of the Constitution, as in the present case.
 

 The argument is made that the instant litigation is affected by the cases of
 
 Village of Brewster
 
 v.
 
 Hill,
 
 128 Ohio St., 343, 190 N. E., 766, and
 
 State, ex rel. Public Institutional Building Authority,
 
 v.
 
 Griffith, Secy. of State,
 
 135 Ohio St., 604, 22 N. E. (2d), 200. In the former, Section 6, Article VIII of the Constitution, was invoked to invalidate a contract for the purchase of generating machinery by the village of Brew
 
 *609
 
 ster, and in the latter Sections 1 and 3 of Article VIII, appertaining to the prescribed debt limitation beyond which the state may not obligate itself, were involved. We do not consider either of these cases in point. Neither referred to nor was concerned with Section 12, Article XVIII of the Constitution, and both were decided upon facts wholly dissimilar to the ones now engaging our attention. A case more in point, and lending support to the position herein taken, is
 
 Kasch
 
 v.
 
 Miller, Supt. of Public Works,
 
 104 Ohio St., 281, 135 N. E., 813.
 

 The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Turner, Williams, Matthias and BettMan, Jj., concur.
 

 Weygandt, C. J., and Zimmerman, J., concur in paragraphs 2, 3 and 4 of the syllabus and in the judgment, but dissent from paragraph 1 of the syllabus.
 

 Hart, J., concurs in paragraphs 1 and 2 of the syllabus but dissents from paragraphs 3 and 4 of the syllabus and from the judgment.