Taft, J.
This is an action in mandamus originating in this court to compel the mayor and the auditor of the city of Columbus to sign and execute certain bonds. These two officials have demurred to the petition.
This cause is a sequel to State, ex rel. Gordon, City Atty., v. Rhodes, Mayor, 156 Ohio St., 81, 100 N. E. (2d), 225. The facts involved herein are substantially the same as those in that case except for certain amendments to the ordinance authorizing the issuance of the bonds. Those amendments provide for an obligation on the part of the city to apply a specified portion of revenue received from on-street parking meters toward payment of such bonds.
At the outset, it may be observed that one of the respondents, as mayor, approved all of the ordinances whose validity he now questions. Furthermore, the *131 city attorney represents the relator and some of his assistants represent the respondents. Under the circumstances, it is apparent that this case definitely calls for the application of the principle that a reported decision, although in a case where the question might have been raised, is entitled to no consideration whatever as settling, by judicial determination, a question not passed upon or raised at the time of the adjudication. Milwaukee Mechanics’ Ins. Co. v. Russell, 65 Ohio St., 230, 257, 62 N. E., 338, 56 L. R. A., 159; Fouts v. State, 8 Ohio St., 98, 123; State v. Pugh, 43 Ohio St., 98, 121, 123, 1 N. E., 439.
With this in mind, we will confine ourselves in the decision of this case strictly to the questions raised by the respondents and the arguments advanced by them on those questions.
It is first contended by respondents that “the city council, having by express provision in its ordinances determined that the proposed bond issue will have inadequate security, there is no duty placed upon the respondents to sign and execute the proposed bonds.”
In support of this contention, respondents point out “that city council has determined that the receipts from the off-street parking facility itself are inadequate to secure the bond issue,” and that, in an “attempt to make such security adequate, council then provided for the allocation of a portion of the receipts from the on-street parking meters to the payment of said bonds, but * * * reserved to any subsequent council, during the life of the bonds, the right to remove all of such parking meters from the streets of Columbus, if any future council * * * shall conclude that the removal of such parking meters is desirable.” It is then argued that “any pledge or covenant made by city council in such ordinance can assure no income whatsoever from street parking meters to augment the *132 receipts of the off-street parking facility which city council has expressly determined are inadequate in themselves to meet the bond issue.”
The inadequacy, if any, of the security for these bonds by reason of these provisions of the ordinances should be just as apparent to the buyer of the bonds as they are to respondents. If the buyer of the bonds is willing to assume the described risk, no reason is apparent why this court should prevent it from assuming that risk.
Respondents next contend that “the attempt to pledge an aliquot portion of the receipts from on-street parking meters for the payment of the off-street parking facility completely contradicts and makes futile the alleged public purpose to be served by the construction and operation of such off-street parking facility.”
In support of this contention the argument of respondents is:
“It condemns on-street parking as causing a traffic congestion and uses that as the basis for justifying an off-street parking facility and, in the next breath, approves on-street parking as a means of financing off-street parking.
“These two positions are completely contradictory. Certainly council cannot use the elimination of on-street parking as a justification for off-street parking and then provide for financing off-street parking by the income from on-street parking.”
The answer to this contention of respondents is that provision for off-street parking will obviously alleviate, even though it may not eliminate, the necessity for on-street parking. If the total elimination of on-street parking may be a public municipal purpose, as this court held in State, ex rel. Gordon, v. Rhodes, supra, *133 the partial elimination thereof would likewise appear to be a public municipal purpose.
The final contention of respondents is a bilateral one, that “the provision in the ordinance for the use of on-street parking meters for revenue, in addition to their use for regulation and policing of the streets and the cost and maintenance of the meters, constitutes the imposition of a tax, which is unlawful and beyond the power of the city council, but, even if the pledging of said revenue is lawful, the pledge thereof makes the proposed bonds a debt of the city and there are no allegations of compliance with the statutory requirements for issuing obligation bonds.”
The significance of this contention arises from the provisions of Section 13 of Article XVIII of the Constitution, which provides in part:
“Laws may be passed to limit the power of municipalities to levy taxes and incur debts for local purposes * * V’
It is apparent that if, by the collection of fees for on-street parking, the city of Columbus would be levying a tax, or if, by issuance of the bonds here involved, the city of Columbus would incur a debt, then limitations such as those imposed by the General Assembly in statutes such as the Uniform Bond Act might justify refusal of issuance of the writ of mandamus in the instant case. For example, it was conceded by counsel for relators that the requirements of Sections 2293-27 and 2293-28, General Code, a part of the Uniform Bond Act, would not be met in the issuance of these bonds.
In considering the first part of this bilateral contention, it is necessary to determine what the ultimate purposes of these various ordinances are. It is apparent that their purposes are to provide facilities for the parking of motor vehicles where and to the *134 extent that such facilities are required by the public in the city of Columbus. In view of our decision in State, ex rel. Gordon, v. Rhodes, supra, we do not believe that it can be seriously contended that this is not a public municipal purpose. The problem of providing such facilities may be solved by providing them partly on and partly off the streets. Cf. Hartwig Realty Co. v. City of Cleveland, 128 Ohio St., 583, 192 N. E., 880. The city of Columbus, through its council, has determined to do that.
Unless, as the record does not disclose in the instant case, the fees to be charged for parking will be unreasonable or designed to bring in revenue more than sufficient to cover the cost and expense of providing the necessary parking facilities required on and off the streets, it cannot be said that such fees in effect amount to taxes. Prudential Co-operative Realty Co. v. City of Youngstown, 118 Ohio St., 204, 160 N. E., 695.
The ordinances involved in the instant case do not contemplate the diversion of any revenues received from the furnishing of these parking facilities to any use other than the cost of furnishing them. Even if, as they undoubtedly will be, the revenues received from on-street parking will be more than required to pay the cost of furnishing that on-street parking, any surplus from that source is to be used for the overall public municipal purpose of furnishing necessary parking facilities. Cf. Himebaugh v. City of Canton, 145 Ohio St., 237, 61 N. E. (2d), 483; City of Cincinnati v. Roettinger, 105 Ohio St., 145, 137 N. E., 6; City of Lakewood v. Rees, 132 Ohio St., 399, 8 N. E. (2d), 250. The problem involved is not merely the provision of on-street parking facilities for a service fee but the provision for a service fee of necessary parking facilities whether on or off the street.
*135 The question, whether by the issuance of the bonds here involved the city of Columbus will incur a debt, is the most serious question raised.
This court has repeatedly held that a debt is not incurred by a political subdivision where it merely incurs an obligation to apply revenue, to be received from property being acquired by it, to payment of the cost of the property being acquired. Kasch v. Miller, Supt., 104 Ohio St., 281, 135 N. E., 813; State, ex rel. State Bridge Comm., v. Griffith, Secy. of State, 136 Ohio St., 334, 25 N. E. (2d), 847; State, ex rel. Allen, v. Ferguson, Aud., 155 Ohio St., 26, 97 N. E. (2d), 660; State, ex rel. Gordon, v. Rhodes, supra. However, where the revenues, which such subdivision is obligated to so apply, include revenues of such subdivision in addition to those to be received from the property being acquired, the broad language of paragraph two of the syllabus and some of the language in the opinion in State, ex rel. Public Institutional Building Authority, v. Griffith, Secy. of State, 135 Ohio St., 604, 22 N. E. (2d), 200, would support a conclusion that a debt is incurred. In the instant case, the city of Columbus has obligated itself to apply revenues received from on-street parking to payment of these bonds and those revenues will obviously not be received wholly from property to be acquired with the proceeds of the bonds. However, paragraph two of the syllabus in the Public Institutional Building Authority case must be read-in the light of the facts of that case. As pointed out in the opinion in State, ex rel. Allen, v. Ferguson, supra, at page 38, the revenues in the Public Institutional Building Authority case which were “to be the source of money for payment of the bonds” were “revenues from payments by the state.” No revenues from payments by the city are involved in the instant case.
*136 In support of paragraph two of the syllabus in the Public Institutional Building Authority case, the opinion cites Village of Brewster v. Hill, 128 Ohio St., 343, 190 N. E., 766. That case is readily distinguishable from the instant case. It involved the question whether a municipality had pledged its credit. When an obligation is incurred, credit may be pledged, but it does not necessarily follow that a “debt” is incurred.
The Public Institutional Building Authority case, as well as Village of Brewster v. Hill, supra, was also distinguished in City of Middletown v. City Commission, 138 Ohio St., 596, 609, 37 N. E. (2d), 609.
Since the city has obligated itself to apply toward payment of these bonds only revenues collected from the necessary motor vehicle parking facilities to be provided on and off the streets and it does not appear that the fees to be collected for furnishing such facilities will be unreasonable in amount or designed to bring to the city revenue other than sufficient to cover the cost and expense of providing such necessary parking facilities, we are of the opinion that the city will not be levying a tax in collecting such fees or incurring a debt in issuing the bonds involved in the instant case.
It follows that statutory requirements for issuing bonds are not applicable to the issuance of the bonds in the instant case. State, ex rel. Gordon, v. Rhodes, supra.
The ordinances involved in the instant case impose mandatory duties on respondents to execute these bonds. Since respondents have advanced no valid reasons for not complying with the duties so imposed upon them, the demurrer to the petition is overruled and the writ is allowed.

Writ allowed.

Weygandt, C. J., Zimmerman, Stewart, Middleton and Hart, JJ., concur.