HELEN JEFFREYS, Respondent, *v.* CLARENCE JEFFREYS, Defendant, and CITY OF NEW YORK, Appellant.

Second Department, April 3, 1972.

*J. Lee Rankin, Corporation Counsel (Stanley Buchsbaum* and *Nina G. Goldstein* of counsel), for appellant.

*Nancy E. LeBlanc (Carolyn M. Heft* of counsel), for respondent.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz* and *Amy Juviler* of counsel), *amicus curiae.*

SHAPIRO, J.   The plaintiff, an indigent, seeking to institute this action for divorce, obtained an order pursuant to CPLR 1101 granting her permission to proceed as a poor person. Upon proof that the defendant, her husband, could not with due diligence be served by personal service or other approved statutory method, she obtained an order, upon consent of the appellant, the City of New York, permitting service on him by publication, with the expenses thereof to be paid by the city (*Jeffreys* v.

*Jeffreys,* 57 Misc 2d 416). In granting the order, Mr. Justice SOBEL at the Special Term noted that this appeared to be a "first", adding that he had been informed that agencies offering free legal service in matrimonial actions had refused to undertake such actions where service by publication is required and the plaintiff is unable to pay for such expenses.

The city, after "a more studied analysis of the matter," concluded that its consent "could not readily be supported." It therefore sought a reconsideration of the plaintiff's motion and requested permission to withdraw its consent. Its motion for reconsideration was granted and Mr. Justice .SOBEL concluded that the poor persons statute (CPLR 1102) did not authorize payment of the expense of publication and that the courts do not have the inherent power to direct payment of this category of "auxiliary expenses" out of public funds "unless constitutionally mandated" (*Jeffreys* v. *Jeffreys,* 58 Misc 2d 1045, 1048, 1050, 1051), but he nevertheless ruled that, because the statutes governing service by publication in such actions erect a money hurdle to the statutorily required judicial proceedings for dissolution of a marriage, they constitute a denial of the equal protection of the laws guaranteed by the State and Federal Constitutions. This, the court ruled, justified a direction that the City of New York pay the plaintiff's publication expenses (*id.,* p. 1056).

The court also found that of the various forms of substituted service permitted by our statutes, e.g., (1) nailing and mailing, (2) delivery to a person of suitable age and discretion, (3) such other methods as the court directs and (4) publication, only publication is available when the continued existence of a party is unknown or when a party, either adventitiously or purposely, cannot with due diligence be served within or without the State (*id.,* p. 1057).

While the city was giving its "more studied analysis" to its original consent to the plaintiff's motion for payment by the city of the expenses of publication, it paid those expenses and the plaintiff proceeded to obtain her divorce. The question of whether this makes this appeal moot will be discussed below.

*Boddie* v. *Connecticut* (401 U. S. 371) was a class action in which indigent women attacked the constitutionality of the Connecticut statute governing payment of fees for service of process required to initiate an action for divorce. The court there decided that the due process clause of the Fourteenth Amendment bars a State from limiting access to its divorce courts by requiring payment by an indigent plaintiff of a filing fee or other

fees for services by publication, because that requirement prevents such a plaintiff from commencing actions (*id.*, p. 380).

In disavowing responsibility for payment of the publication expenses the city concedes that *Boddie (supra)* requires payment of such expenses out of public funds, but contends that it must be made by the State, and not by the city, since there is no statute imposing such a liability upon the city. The plaintiff argues only that either the city or the State must pay the expenses of publication in such cases in order to insure access to the courts guaranteed by the due process clause of the Fourteenth Amendment.

Since the State has an interest in the question raised by the parties to this litigation, this court invited the Attorney-General to submit a brief *amicus curiae.* In response to that invitation the Attorney-General submitted a brief in which he argues that the Special Term was clearly correct in holding that the publication expenses were chargeable to the city. He also argues that in cases where a plaintiff in a matrimonial action is unable to pay for the publication, other (presumably cheaper) means of service are available and ought to be used, suggesting that posting and mailing to the last known address is the obvious alternative to service by publication.[1]

In ruling that a court enforcing a constitutional mandate may command payment by the city of auxiliary expenses, such as the cost of service by publication, Mr. Justice SOBEL based his conclusion on the fact that (p. 1056) " the Legislature, exercising front-line responsibility, has in other related areas designated the treasurer of the city or county as the general source of such funds," citing subdivision (b) of CPLR 1102, article 18-B of the County Law, section 77 of the Mental Hygiene Law and section 456 of the Code of Criminal Procedure (now CPL 460.70, subd. 1). Each of these provisions excuses indigent par-

---

1. The latter argument has no relevance, since the existing State laws governing service of process in a matrimonial action specifically bar service by posting and mailing (CPLR 308, subd. 4; Domestic Relations Law, § 232). Furthermore, the order granting the plaintiff permission to serve by publication in the instant case also directed service of the summons on the defendant by mail directed to two specific New York City addresses and to an address in Michigan described as the "addresses being the places defendant would be most likely to receive mail." In addition, the trial court found, as has been noted above, that publication, despite its admitted shortcomings as a method of notice (see *Boddie* v. *Connecticut,* 401 U. S. 371, 382, *supra*), was the only method available where, as here, the continued existence of a party is unknown or a party made it impossible for the plaintiff, with due diligence, to serve him within or without the State.

ties from specific governmental imposed fees and other costs arising from their involvement in litigation and each specifically imposes waiver of fees or payment of the particular cost on the city or county, as the case may be.

That the legislation imposing the duty to pay such expenses on the city is by no means a reflection of an invariant pattern is demonstrated by section 35 of the Judiciary Law, which imposes on the State the expense of providing legal counsel to indigent persons who bring on a petition for habeas corpus, and section 248 of the Family Court Act, which requires the State to pay for Law Guardians appointed for minors in Family Court neglect and juvenile delinquency proceedings.

Both the city and the State argue that, in the absence of specific statutory or constitutional authorization, they are forbidden to make the payment here under consideration, though both concede, in view of *Boddie* (*supra*), that such payment must be made from public funds.

The city relies on *Matter of Guarino* v. *Anderson* (259 N. Y. 93, 96), where the Court of Appeals said: "Neither the courts nor the Board of Supervisors have any power to audit or allow a claim against a county, which is not authorized by law." The city also cites *Matter of Tinsley* (90 N. Y. 231), where the Court of Appeals upheld the reversal of a lower court which had set the fee of a stenographer and charged a county with payment thereof. In so doing the Court of Appeals said (p. 234): "No court can audit any claim against a county or order any claim to be paid by the county treasurer, except by the authority of some statute." (See, also, *Kelly* v. *Merry*, 262 N. Y. 151, 157, where Chief Judge POUND relied on "the rule that the municipality can do no act, make no contract and incur no liability not permitted by legislative act, either specifically or by fair and reasonable implication.")

The State fails to point to any specific statutory authorization for city payment of the cost of publication. It argues only that "most similar expenses are paid by the locality," that "localities are responsible for the residual expenses of managing the Court system under the State Constitution" and that "the pattern of *forma pauperis* statutes is such that the logical framework for the new motion for payment of publication expenses is Article 11 of the CPLR." But we are not here faced with "residual expenses of managing the Court system" and the fact that payment by the city for service by publication may fit a logical framework cannot substitute for the required statutory authorization for such payments by the city which the State

concedes "is not included among the free services provided to indigent parties under Article 11" of the CPLR.

In our view, the absence of such specific legislative authorization is crucial and requires a ruling reversing the decision of the Special Term (*Jackson* v. *Jackson*, 37 A D 2d 953). We do not agree with the decision to the contrary in *McCandless* v. *McCandless* (38 A D 2d 171).[2]

In so holding it is not our purpose to leave the plaintiff without remedy. Clearly her constitutional right to access to the courts to bring her action for divorce despite her indigency cannot be allowed to go down the drain because the city mistakenly first accepted responsibility for payment of the publication expense and then reversed its position and the State now claims that such payment is not its responsibility. The right of plaintiffs, in such a situation, to have access to the divorce court should not thus be lost by falling between the two stools. But since the State is not a party to this action we are without power to order payment by it of that for which we feel it is responsible. It should be noted, in this connection, that section 1 of article XVII of the State Constitution provides that "the aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." Until the Legislature determines that the aspect of aid to the needy here under consideration shall be provided by the city as a subdivision of the State, the obligation to pay such expenses remains with the State.

There remains for discussion only the question of the impact of our ruling on the respondent, Helen Jeffreys. Since the city has already paid her cost of service by publication and is hardly likely to sue her to recover that expense, since she was and presumably still is indigent, the question arises as to whether such

2. In *McCandless* the court based its holding that the county must pay on the ground that "the absence of specific provision of law relating to the source of payment of publication costs for indigents does not permit our negating the mandate of *Boddie*" (38 A D 2d 171, 173). But, as we see it, the alternatives are not either requiring the local governing structure, the city or county, to pay the cost of publication, or negating the mandate of *Boddie*. Rather the question is solely whether it is the State or the local governing body which is chargeable with the cost of service by publication if that is necessary to protect the indigent plaintiff's constitutionally protected right of access to the courts. The fact that the procedure for obtaining payment of that cost would appear to be more onerous if it be the State which must pay it is no justification for ignoring the absence of the legally necessary legislative authorization for such payment by the local government and imposing it on that State subdivision.

payment does not make the entire matter moot (see *People ex rel. Geer* v. *Common Council of City of Troy,* 82 N. Y. 575; *Lo Vallo* v. *Bellanca,* 11 A D 2d 901; *Yanarella* v. *McClane,* 16 A D 2d 982). We do not believe that it does. The Special Term specifically noted the importance of the issue (*Jeffreys* v. *Jeffreys,* 57 Misc 2d 416, 417, *supra*); the respondent's brief comments that the issue raised in this appeal affects " many indigent individuals similarly situated "; and Professor Joseph M. McLaughlin noted in his 1971 Supplementary Practice Commentary on CPLR 1102 (McKinney's Cons. Laws of N. Y., Book 7B, CPLR, Pocket Part) that *Boddie* left open the question raised in his 1969 commentary as to whether incidental auxiliary expenses paid to private persons must be picked up by the State when the plaintiff is indigent. He also called attention to the last sentence of his 1969 commentary in which he said, " It is to be expected that much more will be heard in future years about the rights of the indigent in civil litigation."

The importance of the issue as one likely to recur and to affect an important aspect of our society brings into play the doctrine embodied in *East Meadow Community Concerts Assn.* v. *Board of Educ. of Union Free School Dist. No. 3* (18 N Y 2d 129, 135), where the Court of Appeals reversed a dismissal of an appeal on the ground that the appeal had become moot, saying: " The mere fact that the scheduled date for the plaintiff's concert may have passed affords no basis for declining to review the important constitutional issues presented. It is settled doctrine that an appeal will, nevertheless, be entertained where, as here, the controversy is of a character which is likely to recur not only with respect to the parties before the court but with respect to others as well " (citing cases). (See, also, *Matter of Oliver* v. *Postel,* 30 N Y 2d 171.)

The issue here is one which has already risen in a number of cases in this State. (See *Caldwell* v. *Caldwell,* N. Y. L. J., Jan. 31, 1969, p. 18, col. 1; *Dorsey* v. *City of New York,* 66 Misc 2d 464 [neither of which cases was appealed]; *Albino* v. *Albino,* N. Y. L. J., Dec. 8, 1971, p. 25, col. 4; *Jackson* v. *Jackson,* 37 A D 2d 953, *supra*; *McCandless* v. *McCandless,* 38 A D 2d 171, *supra*.) Because " the question is one of major importance and, because it will arise again and again, one that invites immediate decision " (*Matter of Rosenbluth* v. *Finkelstein,* 300 N. Y. 402, 404; *East Meadow Community Concerts Assn.* v. *Board of Educ. of Union Free School Dist. No. 3, supra*), we deem it appropriate to entertain and decide the appeal rather than to dismiss it on the ground that it is now moot (*Matter of United Press Assns.* v.

*Valente,* 308 N. Y. 71, 76; *Matter of Glenram Wine & Liq. Corp.*
v. *O'Connell,* 295 N. Y. 336, 340). We also feel that since under
our decision future indigent litigants will be compelled to sue
the State in the Court of Claims to obtain their proposed dis-
bursements — a most cumbersome procedure indeed — legislative
action is urgently required to take care of the situation.

The order under review should be reversed, without costs,
insofar as it directed the Director of Finance of the City of New
York to pay the expense of service by publication of the summons
in this action, and the plaintiff's original motion to compel pay-
ment by the City of New York of that expense should be denied.

RABIN, P. J., MUNDER, MARTUSCELLO and LATHAM, JJ., concur.

Order of the Supreme Court, Kings County, dated December
26, 1968, reversed insofar as appealed from, without costs, and
plaintiff's original motion to compel payment by the City of
New York of the expense of service by publication of the sum-
mons in this action denied.